[Cite as *In re A.R.*, 2019-Ohio-1272.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

IN RE: A.R.
     A.R.

C.A. No.     18CA011409


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE Nos.    16JC49798
                16JC49535

DECISION AND JOURNAL ENTRY

Dated: April 8, 2019

_____

CALLAHAN, Judge.

{¶1} Appellant, Robert R. ("Father"), appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that modified an order of joint legal custody of Father's two daughters and placed the children in the sole legal custody of a maternal great aunt ("Aunt"). This Court affirms.

I.

{¶2} Father is the biological father of 1-A.R., born October 23, 2013; and 2-A.R., born May 16, 2016. Although Father was married to the children's mother ("Mother") throughout these proceedings, Mother did not participate in the motions or hearing on the modification of legal custody and did not appeal from the trial court's judgment.

{¶3} Lorain County Children Services ("LCCS") became involved with this family when 2-A.R. tested positive for cocaine at birth. Because of concerns about Mother's ongoing drug use and domestic violence in the home, LCCS entered into a voluntary case plan with

Mother and Father. Five months later, however, because Mother had not been complying with the terms of the voluntary case plan, LCCS filed complaints to allege that both children were neglected and dependent and that 2-A.R. was also abused by being exposed to drugs in utero. The children were removed from their parents' custody and were initially placed in the emergency temporary custody of paternal relatives.

{¶4} The children were later adjudicated neglected and dependent and 2-A.R. was also adjudicated abused. Both children were placed in the temporary custody of Aunt under an order of protective supervision by LCCS. LCCS later moved to have the children placed in the legal custody of Aunt. Aunt and Father reached an agreement to share legal custody, however. Pursuant to a journal entry filed September 1, 2017, both children were placed in the joint legal custody of Father and Aunt and protective supervision by LCCS was terminated.

{¶5} During October 2017, 1-A.R. complained of soreness in her genital area and was urinating frequently. Because Father and his sister had also seen 1-A.R. lying on her back and putting her legs in the air, behavior that they believed was abnormal for a young child, they became concerned that 1-A.R. had been sexually assaulted. According to Father and his sister, they questioned 1-A.R., who disclosed that she sometimes bathed and slept with her six-year-old cousin and that the cousin had touched her private parts and shown her his "pee-pee."

{¶6} Father did not report these concerns to LCCS or Aunt, but instead scheduled an appointment with a pediatrician who was not the children's doctor at that time. The children would be with Aunt on the date of the scheduled appointment, so Father sent her a text message about the appointment. Aunt replied that the children had been seeing another doctor regularly, that all their medical needs were being met, and that she would not take the children to see a different doctor.

{¶7} Father appeared for the appointment he had scheduled, but, as she had indicated to Father, Aunt did not bring the children. When the children returned to Father's home the following weekend, without contacting LCCS or Aunt, Father and his sister took both children to the emergency room at Rainbow Babies and Children's Hospital. Father reported the allegations of sexual abuse and a forensic rape exam was performed on 1-A.R. Father stopped the exam before it was completed, however, because the child became upset.

{¶8} On Monday, October 28, 2017, the caseworker learned that Father had taken the children to the hospital because he was concerned that the girls' six-year-old male cousin had inappropriately touched 1-A.R. The caseworker informed Aunt and told her to keep the children away from the cousin while the agency and police investigated the allegations. The caseworker had no concerns about Aunt's ability to protect and care for the children. LCCS and the police were unable to find any evidence to substantiate the allegations against the cousin, so their investigations into those allegations were later closed.

{¶9} During the investigation by LCCS, however, 1-A.R. disclosed to the caseworker, and later to her counselor, that Father had inappropriately touched her genital area. The caseworker informed Aunt and the police. Both LCCS and the police began investigations into those allegations.

{¶10} On November 9, 2017, Aunt filed a motion for emergency temporary custody of 1-A.R. and 2-A.R. That same day, the children were placed in Aunt's emergency temporary custody and Father's visitation with them was suspended. Later, Aunt and Father each filed a motion for sole legal custody of the children. Following a hearing before a magistrate, the children were placed in Aunt's legal custody. Father filed objections to the magistrate's

decision, which were overruled by the trial court. The trial court placed the children in the legal custody of Aunt. Father appeals and raises one assignment of error.

I.

ASSIGNMENT OF ERROR

> THE TRIAL COURT'S DECISION AWARDING LEGAL CUSTODY OF THE MINOR CHILDREN TO A NON-PARENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶11} Father asserts that the trial court's decision to terminate its prior order of joint legal custody and to award Aunt sole legal custody of the children was not supported by the evidence in the record. R.C. 2151.42(B) provides that an order of legal custody issued pursuant to R.C. Chapter 2151 "is intended to be permanent in nature." Consequently, the juvenile court has authority to modify or terminate a legal custody order only if it finds, "based on facts that have arisen since the order was issued or that were unknown to the court at that time, that a change has occurred in the circumstances of the child or the person who was granted legal custody, and that modification or termination of the order is necessary to serve the best interest of the child." *Id*.

{¶12} The trial court had ample evidence before it to support its conclusion that there had been a change in the circumstances of the children and one of their custodians, Father, and that primarily for that reason, it was in the children's best interest to be placed solely with Aunt. Although Father asserts that the only change of circumstances was that he and Aunt did not get along, the trial court heard considerable evidence about allegations that 1-A.R. had been inappropriately touched by her cousin, the unreasonable way that Father addressed those allegations, and that the allegations were never substantiated. There was also evidence that allegations later arose that Father had inappropriately touched 1-A.R. and LCCS considered

those allegations "indicated" because it had found evidence to support them. Father did not challenge the agency's determination through its administrative appeal process and, at the time of the hearing, the allegations against Father remained under investigation by the police.

{¶13} Several witnesses, including the guardian ad litem, expressed concern that Father had not discussed the allegations about the six-year-old cousin with LCCS or Aunt and that he had overreacted by taking the child to the hospital for a rape exam, which had been traumatizing for 1-A.R. Although Father testified at the hearing that he was "just hoping" that 1-A.R. had a urinary tract infection ("UTI") or a yeast infection, he did not call Aunt to inquire, nor did he inform the E.R. staff that he believed the child might have had a UTI or a yeast infection, which could have been diagnosed through a urine test or a less drastic examination than one necessitated by a forensic rape exam. Notably, the child had been diagnosed with a UTI and had been prescribed medication, but Aunt forgot to inform Father or send the child with her medication. At the hospital, no urine test was done, but instead the child was swabbed for evidence of sexual assault or venereal disease.

{¶14} Father informed the hospital emergency room staff that he believed that 1-A.R., then almost four years old, had been the victim of sexual abuse by her cousin. They waited approximately two hours for the person who performs the sexual assault forensic examination, known as a SANE exam. The child was interviewed, and a physical examination of her body was begun. Father would later admit that he realized that the examination might be traumatic for 1-A.R., but he told the examiner to "start going through it" and see how the child tolerated the exam. Because 1-A.R. became distraught, Father stopped the forensic examination before it was completed. According to hospital records, however, the testing that had been completed included swabbing for cultures from the child's mouth, vagina, and rectum, which later tested

negative for venereal diseases. Moreover, the child was at the emergency room for nearly eleven hours.

{¶15} After LCCS and the police learned of the allegations against the cousin, they began investigations. During the investigation by LCCS, 1-A.R. never disclosed anything about her cousin to the caseworker, who had been trained to interview children about suspected abuse. The child did later disclose to the caseworker, however, that Father touched her genitals one night in her bedroom at his house. She further disclosed that Father had told her not to tell anyone or he would not give her juice or play games with her. The child later made a similar disclosure to her counselor, who reported the disclosure to LCCS.

{¶16} The caseworker reported the allegations about Father to the local police department where Father resided in Cuyahoga County. At the time of the hearing, the police were still investigating to determine whether to file criminal charges against Father.

{¶17} The caseworker also informed Aunt of the recent disclosure about Father. Although Father challenged Aunt's credibility at the hearing and suggested that she had coached the child, Aunt testified that she never questioned 1-A.R. about the allegations, nor did the child make any disclosures to her. Moreover, the caseworker concluded that, based on her 16 years of experience, there was no indication that the child had been coached. LCCS believed Aunt, had no concerns about her ability to protect and care for the children, and supported her motion for sole legal custody.

{¶18} Because the agency concluded that it had gathered sufficient evidence, LCCS determined that the child's allegations of abuse by Father were "indicated." At the legal custody hearing, Father attempted to discredit the results of the agency's investigation, but he had failed to challenge the agency's conclusion when he had the opportunity to do so through the

administrative appeal process. LCCS had sent Father a letter to explain the results of the investigation and that Father had a right to appeal, but Father did not appeal the agency's determination. *See* Ohio Adm.Code 5101:2-33-20.

{¶19} Based on the totality of the circumstances that had arisen since the initial order of joint legal custody, the trial court reasonably concluded that there had been a change in the circumstances of Father and the children. The outstanding allegations of abuse by Father necessarily factored into the trial court's best interest analysis. Given that the agency and the guardian ad litem had concerns about Father's behavior and were confident that Aunt could provide the children with a safe and stable home, the trial court reasonably concluded that legal custody to Aunt was in the children's best interest.

{¶20} To further support its best interest determination, the trial court heard evidence that Aunt had raised two biological children, ages 16 and 18, who lived in her home; got along well with 1-A.R. and 2-A.R.; and assisted Aunt in supervising and caring for them. Aunt also has several adult family members who live in the area and help with the children. The guardian ad litem also believed that it was in the best interest of the children to be placed with Aunt.

{¶21} Father has failed to demonstrate that the trial court's decision to place both children in the sole legal custody of Aunt was not supported by the evidence. His assignment of error is overruled.

III.

{¶22} Father's assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

TEODOSIO, P. J.
CARR, J.
CONCUR.

APPEARANCES:

JOSEPH B. ROSE, III, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and DANIELLELA BEARDEN, Assistant Prosecuting Attorney, for Appellee.

BRANDON OLIVER, Attorney at Law, for Appellee.

JOHN OTERO, Guardian ad Litem.